UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENKAMENIN RICE,

    Petitioner,

v.

THOMAS WINN,

    Respondent.

Case No. 16-11516
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

---

Tenkamenin Rice was convicted in state court of three counts of assault with intent to murder, four counts of felonious assault, and possession of a firearm during the commission of a felony. He filed this case under 28 U.S.C. § 2254 seeking a writ of habeas corpus. His petition raises six claims for relief.

The Court finds that none are meritorious. So the petition will be denied.

**I.**

The Michigan Court of Appeals recited the following underlying facts:

This case arises from two separate incidents that occurred in Detroit on May 20, 2012. Defendant's convictions of felonious assault stem from allegations that he used a gun to threaten Lakeith Alexander, Darrell Webb, Shaquille Sherman, and Darius Townsend in the parking lot of J & S Party Store at about 10:30 a.m. Defendant's convictions of assault with intent to murder arise from allegations that less than 30 minutes after the altercation at the party store, he fired several rounds at Alexander, Webb, and Townsend while they were sitting in a burgundy Grand Prix parked on Grandville Street.

*People v. Rice*, No. 313754, 2014 WL 2880374, at *1 (Mich. Ct. App. June 24, 2014).

Following his convictions, Rice filed an appeal in the Michigan Court of Appeals and raised the following claims:

I. The prosecution engaged in prosecutorial misconduct during closing arguments by suggesting facts not in evidence, which violated defendant's due process rights and resulted in a miscarriage of justice.

II. Rice's Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to object to the prosecutorial misconduct in its closing argument.

III. The trial court abused its discretion when it ruled the prosecution exercised due diligence in its attempts to secure victim Shaquille Sherman's presence at trial and failed to give the standard missing witness instruction.

IV. The in-court identification of Rice should have been stricken because it was the product of a tainted photographic lineup.

V. Police and prosecutorial misconduct deprived Rice of a fair trial and due process of law, constituting manifest injustice.

VI. There was insufficient evidence to convict Rice.

The Michigan Court of Appeals affirmed Rice's convictions. *Rice*, 2014 WL 2880374, at *6.

Rice then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court summarily denied the application. *People v. Rice*, 858 N.W.2d 433 (Mich. 2015).

Rice's habeas petition in this court also raises the same claims.

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

A state-court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of [§ 2254(d)] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

### III.

### A.

The Warden contends that Rice's first, third, fourth, and fifth claims are procedurally defaulted because the errors were not preserved at trial. (ECF No. 6, PageID.52.)

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally,

"federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case the Court deems it more efficient to proceed directly to the merits on Rice's first, third, fourth and fifth claims.

## 1.

Rice's first claim asserts that the prosecutor committed misconduct during closing argument by arguing facts that were not supported by the trial evidence.

The Michigan Court of Appeals recounted the prosecutor's complained-of remarks as follows:

> And I told you in opening statement that there will be witnesses that [sic] will not want to testify. I indicated that this was a gang situation, that this was a retaliation issue that's going on here.

> The prosecutor then addressed the inconsistencies between some witnesses' trial testimony and the previous statements they gave to police:

> Now of course, a month later, individuals are back on the street. Back living whatever life they were living previously. There are other influences that come into play. Maybe threats, maybe payoffs, maybe just honor among thieves; whatever the issue is.

*Rice*, 2014 WL 2880374, at *2.

Because there was no objection during the trial, the Michigan Court of Appeals conducted a plain-error review of this claim. *Id*. at *1. The court found that the prosecutor's statements were not improper "because they were supported by evidence and reasonable inferences arising from the evidence." *Id*. at *2 (citing *People v. Meissner*, 812 N.W.2d 37, 47 (Mich. Ct. App. 2011)).

The court cited to Rice's statement to police that the funeral for his girlfriend's cousin (Marcus Cole, a suspected gang member) was the day before the incident and that, after the funeral, members of the RTM gang drove by Rice and yelled "f*** Squid [Cole], RTM." *Id*. The next day, right before the incident at the party store, Rice's girlfriend yelled "f*** RTM," because she believed that the gang was responsible for her cousin's death. *Id*. One of the victims got out of his car and said, "I'm RTM, what up b****?" *Id*. Soon after, that same car was shot up. *Id*. And when police arrived, known gang members surrounded the car. *Id*. The court also found that the prosecutor's suggestion of retaliation was not improper because it was just stated as a suggestion for why certain testimony changed; it did not imply that the prosecutor had special knowledge. *Id*. Lastly, the court found that a curative instruction—that the lawyers' arguments are not evidence— cured any prejudicial effects of the statements. *Id.* at *3.

AEDPA applies when a state court, on plain-error review, "conducts any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1998 (2018). Here, although the Court of Appeals only cited to state law, the cases it relied on discuss prosecutorial misconduct in the context of whether it denied the defendant a fair trial. *See People v. Bennett*, 802 N.W.2d 627 (Mich. Ct. App. 2010). So the Court will presume that the Michigan Court of Appeals adjudicated the claim pursuant to federal law; i.e., it effectively undertook a due process analysis in determining whether the misconduct rendered the trial unfair. *See Johnson v. Williams*, 568 U.S. 289, 298–299 (2013). The Court will apply AEDPA deference to this claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181, (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court held that a

"prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). And with AEDPA deference, "federal courts cannot set aside a state court's conclusion on a prosecutorial-misconduct claim unless a petitioner cites to other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015).

Rice has not met this high bar. As the Michigan Court of Appeals explained, there was evidence presented at trial that allowed the prosecutor to draw the reasonable inference that the motive for the shooting was gang-related retaliation for the death of Cole. (*See* ECF No. 7-10, PageID.617; ECF No. 7-12, PageID.787, 829, 830, 833, 841–843.) Nor was there anything unreasonable about the Michigan Court of Appeals finding that the prosecution's suggestion that retaliation may have been a possible reason why testimony changed was not improper. Rice does not point to any Supreme Court precedent to suggest otherwise.

Rice is not entitled to relief on this claim

**2.**

Rice's third claim asserts that the trial court abused its discretion in ruling that the prosecutor exercised due diligence in attempting to secure Shaquille Sherman's presence at trial and in failing to give the standard missing witness instruction to the jury. Sherman was one of the occupants of the car that was shot up. Rice claims that Sherman would have provided favorable testimony to the defense because he was unable to identify Rice as the shooter and told police that the time between the incident at the party store and the car being shot up was very short.

Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The requirement in Michigan courts that prosecutors produce *res gestae* witnesses is a matter of state law, and thus its enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (6th Cir. 1988) (citing *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Sherman's testimony would not have been exculpatory. So whether the prosecutor exercised due diligence in attempting to locate Sherman is outside the scope of federal habeas review. *See Collier*, 419 F. App'x at 559.

Rice's argument that the trial court erred by not giving the jury the standard missing witness instruction fares no better. Indeed, as the Michigan Court of Appeals found, Rice waived that argument because his trial counsel expressed approval of the jury instructions. *Rice*, 2014 WL 2880374, at *3. So the Court will not review this claim. *See Morgan v. Lafler*, 452 F. App'x 637, 646 n. 3 (6th Cir. 2011).

**3.**

Rice's fourth claim asserts that the in-court identification testimony by the victims should have been suppressed because the testimony was the result of an impermissibly suggestive pre-trial identification procedure. Rice argues that the photo array used by police to identify the shooter was unduly suggestive because the other men depicted in the array did not resemble Rice and did not match the physical description of the shooter given by the victims. Rice's claim refers to the identification testimony of all three victims. The record shows, however, that neither Webb nor

Townsend identified Rice as the shooter at trial. (*See* ECF No. 7-9, PageID.514; ECF No. 7-10, PageID.551–552, 575.) Alexander was the only victim who testified at trial that Rice was the man who shot at their car from the sunroof. (*See* ECF No. 7-9, PageID.473–474, at 38-39, 488–490.)

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers* test).

The Supreme Court has held, however, that suppression of a tainted identification is not always necessary. *Brathwaite*, 432 U.S. at 112–113. The Court held that determining whether to suppress the identification should be done on a case-by-case basis. *Id*. at 116; *see also Biggers*, 409 U.S. at 201. The danger to be avoided is that the initial improper identification procedure resulted in a misidentification. *United States v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id*. "Reliability is the linchpin in determining the admissibility of identification testimony." *Brathwaite*, 432 U.S. at 114. Therefore, a court must undertake a two-step analysis to determine whether identification testimony will be allowed following a pre-trial identification procedure. First, the court must determine whether the pre-trial procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances

to determine whether the identification [at trial] was nevertheless reliable." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

After reciting the applicable constitutional standard, the Michigan Court of Appeals held that the identification testimony at Rice's trial was admissible:

> Even if the photographic lineup was unduly suggestive, Alexander's in-court identification of defendant as the shooter is admissible because it was sufficiently supported by an independent basis. Alexander had prior knowledge of defendant and had seen defendant at the party store only 10 to 30 minutes before the shooting. At the party store, defendant had a gun and was threatening Alexander and his friends and telling them to leave. Thus, Alexander was familiar with defendant's face; he had a particularly memorable encounter with him shortly before the shooting. Alexander identified defendant as the shooter only days after the shooting occurred. Alexander was in the hospital at the time and had not spoken with anyone else who was in the car with him when he was shot. He also said he had not received any text messages or phone calls. Moreover, he did not have a cell phone at the time. Thus, Alexander could not have been influenced by anyone else before he identified defendant in the photographic lineup. Alexander's pretrial identification of defendant and opportunity to see defendant in a particularly memorable situation provided a sufficiently independent basis for Alexander's in-court identification of defendant, making it admissible regardless of whether the photographic lineup was unduly suggestive.

*Rice*, 2014 WL 2880374, at *5.

Because the Michigan Court of Appeals' plain-error review of this claim applied the federal standard, it is entitled to AEDPA deference. *See Stewart*, 867 F.3d at 638.

The state court's determination that the identification testimony was admissible was not contrary to or an unreasonable application of Supreme Court precedent. It correctly recounts the record that Alexander testified that he recognized Rice from the incident at the party store that occurred minutes before the shooting. This startling and proximate event provided a sufficient and independent basis for Alexander's identification of Rice as the man who shot at the car from the sunroof. Ultimately, the reliability of the in-court identification was for the trier of fact to decide, and Alexander's trial testimony that he recognized Rice as the shooter was subjected to full and

fair cross examination, and the jury was instructed as to the factors they should use to evaluate identification testimony. *See Perry*, 565 U.S. at 247–48. Habeas relief is not warranted on this claim.

**4.**

Rice's fifth claim asserts that his trial was rendered unfair by the introduction of evidence that Rice was an occupant of a vehicle in which the gun used in the shootings was recovered. Rice asserts that another occupant of the vehicle was charged with illegal possession of the firearm, while he was not charged in connection with the firearm.

The Michigan Court of Appeals again applied plain-error review to this claim, *Rice*, 2014 WL 2880374, at *5, and because this analysis involved the application of federal law, the Court will apply AEDPA deference to the Michigan Court of Appeals' decision. *See Stewart*, 867 F.3d at 638.

The Michigan Court of Appeals found "it difficult to analyze the legal basis for [Rice's] claim, which he does not support with citations to legal authority." *Rice*, 2014 WL 2880374, at *6. But the state court went on to raise and reject the most likely basis for the claim—a Fourth Amendment challenge—on the grounds that Rice lacked standing to challenge the legality of the search of the third-party's vehicle. *Id.* This analysis did not involve an unreasonable application of Supreme Court precedent.

Rice has also cited to no Supreme Court law that limits introduction of firearm evidence against only those charged with unlawful possession. "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)). Furthermore, "issues adverted to in a perfunctory manner, unaccompanied by some

10

effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). Rice has failed to develop any cognizable legal theory in support of this claim. It therefore does not provide a basis for granting habeas relief.

**B.**

Rice's second claim was not procedurally defaulted. In this claim, Rice asserts that his trial attorney was ineffective for failing to object to the prosecutor's allegedly improper closing argument.

The Michigan Court of Appeals adjudicated this claim on the merits and found that, because the prosecutor's statements were not improper, Rice's counsel was not constitutionally ineffective for failing to object to the statements.

The state court's decision was in accord with federal law. <u>See Bradley v. Birkett</u>, 192 F. App'x 468, 475 (6th Cir. 2006).

**C.**

Rice's final claim challenges the sufficiency of the evidence presented at trial to support his conviction. He argues that the ballistics evidence contradicted the testimony of the victims that Rice shot at their car from an open sunroof. He also asserts that the officer who interrogated him falsely testified that Rice confessed to both shootings.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may not "reweigh the evidence, reevaluate the

credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[E]ven were [the court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.; *see* 28 U.S.C. § 2254(d)(2).

After reciting the applicable constitutional standard, the Michigan Court of Appeals rejected Rice's sufficiency of the evidence claim on the merits as follows:

> First, defendant admitted to his involvement in the party store incident, which supports his convictions for felonious assault. Alexander, Webb, Townsend, and Desaray Williams also testified that defendant had a gun, which he was holding when he told Alexander, Webb, Townsend, and Sherman to leave. Thus, the evidence, including defendant's own testimony, supported his convictions of felonious assault.

> Second, there was evidence that defendant shot at the Grand Prix on Grandville Street. Alexander identified defendant as the shooter. Webb denied that defendant was the shooter at trial, but he was impeached by the preliminary examination testimony he gave that defendant was the shooter. Alexander and Webb both identified defendant as the shooter in a photographic lineup. In addition, the gun used in the shooting was recovered from a car while defendant was an occupant. Viewing the evidence in the light most favorable to the prosecution, we find there was sufficient evidence to conclude that defendant shot at the Grand Prix and its occupants.

*Rice*, 2014 WL 2880374, at *6-7.

The Michigan Court of Appeals adjudicated this claim on the merits, so the Court will apply AEDPA deference.

The Court of Appeals' decision was not contrary to, or an unreasonable application of, the *Jackson* standard. Rice's claim amounts to an attack on the credibility of the prosecution's witnesses. Rice lists a number of reasons why the jury should not have credited the evidence presented against him. He complains that the ballistics evidence did not match the eye-witness accounts, and he claims that a police officer lied. However, "[a] reviewing court does not reweigh

the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132 (2010), (quoting *Jackson*, 443 U.S. at 326). Therefore, assuming the jury resolved questions of credibility in favor of the prosecution, constitutionally sufficient evidence was presented to prove that Rice was the perpetrator of the crimes. Rice is not entitled to federal habeas corpus relief with respect to this claim.

As none of Rice's claims merit relief, the petition will be denied.

## IV.

In order to appeal the Court's decision, Rice must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Rice's claims are devoid of merit. The Court will therefore deny a certificate of appealability.

But the Court will grant permission to appeal in forma pauperis.

Accordingly, the Court DENIES the petition for a writ of habeas corpus (ECF No.1), DENIES a certificate of appealability, and GRANTS permission to appeal in forma pauperis.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: May 29, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, May 29, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager